[Cite as *Kearns v. Boardman Twp. Police Dept.*, 2025-Ohio-475.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| KEVIN KEARNS | Case No. 2024-00776PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| BOARDMAN TOWNSHIP POLICE DEPARTMENT | |
| Respondent | |

{¶1} This case is before for a R.C. 2743.75 (F) report and recommendation. I recommend that the court: (1) find that requester's claim for production of reports moot, (2) grant requester's claim for production of body camera footage as discussed below (3) find that respondent violated R.C. 149.43(B)(1) by unreasonably delaying the production of the records sought, (4) order that requester recover his filing fee and costs from respondent, and (5) order respondent to pay the balance of the costs of this case.

**I.    Background**.

{¶2} On November 3, 2023, requester Kevin Kearns requested copies of body camera footage and reports regarding an arrest made by the Boardman Police Department ("Boardman"), the respondent in this case. Mr. Kearns heard nothing for a month and inquired of the status of his request. He received a non-substantive response. After hearing nothing for another two months, Mr. Kearns again inquired about his request and again received a non-substantive response. *PQ Miscellaneous*, filed December 2, 2024 ("*Respondent's Evidence*"), pp. 3-7.[1]

---

[1] All references to specific pages of *Respondent's Evidence* are to the pages of the PDF copy posted on the court's docket

{¶3} Mr. Kearns heard nothing for another nine months and filed this case, noting Boardman's delay and seeking production of the records he requested more than a year earlier. Meditation was bypassed because of the length of time Mr. Kearns' request had been pending. A schedule was set for the parties to file evidence and memoranda supporting their positions. That schedule has run its course, making this case ripe for decision. *Complaint*, filed November 5, 2025; *Order Bypassing Mediation*, entered November 8, 2024; *Order*, entered December 19, 2024; *Order*, entered January 3, 2025.

## II. Analysis.

### A. Requester's claim for production of records should be denied in part and granted in part.

{¶4} Mr. Kearns requested:

all body worn camera (BWC) footage for all police personnel involved in the initial stop, detention, investigation, arrest, transport, processing, and release of Zoe Lovins-Clipse, who was arrested on 7/24/2023 (I believe it is case number 23B012539). I would also like a copy of the incident/arrest report for the same event. *Respondent's Evidence*, p. 2.

{¶5} I recommend that Mr. Kearns' claim for copies of the reports be denied as moot, but that most of his claim for production of body camera footage be granted.

### 1. Requester's claim for incident/arrest reports is moot.

{¶6} "In general, the provision of requested records to a [requester] in a public-records . . . case renders the . . . claim moot." *State ex rel. Cincinnati Enquirer v. Dupuis*, 2002-Ohio-7041, ¶ 8. A public records case can be mooted by the respondent producing the responsive records during the course of the litigation. *State ex rel. Striker v. Smith*, 2011-Ohio-2878, ¶¶ 17-18, 22. "A court considering a claim of mootness for a public records request must first determine what records were requested, and then whether any responsive records were provided." *Robinson v. Village of Alexandria*, 2018-Ohio-1581, ¶ 6 adopted 2018-Ohio-171 (Ct. of Cl.). A respondent asserting mootness must provide evidence that it produced the records at issue. *State ex rel. Strothers v. Keenon*, 2016-Ohio-405, ¶ 40 (8th Dist.); *State ex rel. Conley v. Park*, 2016-Ohio-5199, ¶ 17 (5th Dist.).

{¶7} Boardman's evidentiary submission contained the reports Mr. Kearns sought, and it was served on him. It contained minimal redactions, and Mr. Kearns has not

objected to those redactions. *Respondent's Evidence*, pp. 11-20. This portion of Mr. Kearn's production claim is therefore moot.

### 2. There is some evidence that respondent has not produced all the body camera footage requested.

{¶8} If there is sufficient evidence that a public office has failed to produce all responsive public records the office must either produce the remaining responsive records or certify that none exist. *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶¶ 37-43, 50. The sufficiency of the evidence to trigger that obligation varies depending on the office's response. Clear and convincing evidence is required if the office provides affidavit testimony, or its equivalent, that no additional records exist. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶¶ 22-26. However, "some evidence" is sufficient if the office does not provide affidavit testimony negating the existence of additional responsive records. *Sultaana*, 2023-Ohio-1177, ¶¶ 37-43. Some evidence exists if other records refer to or suggest the existence of the additional records. *Mattis v Toledo Police Dept.*, 2023-Ohio-4878, ¶¶ 17, 24 (Ct. of Cl.).

{¶9} Mr. Kearns requested body camera footage "for *all* police personnel involved in the initial stop, detention, investigation, arrest, transport, processing, and release of Zoe Lovins-Clipse[.]" *Respondent's Evidence*, p. 2 (Emphasis added). The footage produced appears to be from four officers' body cameras. The incident report Boardman produced identified *six* officers as being involved in the Lovins-Clipse matter, officers Orzi, Neff, Sheely, Higgins, Biel, and Tallman. *Respondent's Evidence*, p. 11. That is some evidence that additional footage exists, and that is sufficient here because Boardman did not submit affidavit or other evidence that it had produced all responsive footage.

{¶10} I therefore recommend that Boardman be ordered to produce footage from the other two officers' cameras or to certify that no such footage exists.

### 3. Most of the redactions to the body camera footage were improper.

{¶11} R.C. 149.43(B)(1) mandates that when "a public record contains information that is exempt from the duty to . . . to copy the public record, the public office . . . shall make available all of the information within the public record that is not exempt." It further

provides that redaction constitutes a denial of the records request as to the redacted material.

{¶12} If a redaction is based on an exemption from public record status the public office must prove the propriety of applying the exemption. A public office asserting an exemption must "prove facts clearly establishing the applicability of the exemption." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 27 (internal punctuation omitted). See also, *Id*. at ¶¶ 35, 54. It "does not meet this burden if it has not proven that the requested records fall squarely within the exception," and the courts "resolve any doubt in favor of disclosure." *Id*. at ¶¶ 27, 63. See also *id*. at ¶¶ 50, 63. The public office must produce extrinsic evidence if the applicability of the exemption is "not obviously apparent and manifest just from the content of the record itself[.]" *Id.* at ¶ 35. See also *id*. at ¶¶ 30, 50, 53. "Unsupported conclusory statements . . . are insufficient." *Id*. at ¶ 35. Boardman has failed to meet that burden for most of its redactions.

{¶13} *Mobile Data Terminal ("MDT") Screens in Police Cruisers*. Boardman redacted multiple portions of the footage that showed the screens of computers in officers' cruisers. It invokes R.C. 149.43(A)(1)(dd)'s personal information exemption as support. That statute exempts "personal information" as it is defined by R.C. 149.45. That latter statute defines personal information as:

"(a) An individual's social security number.

(b) An individual's state or federal tax identification number;

(c) An individual's driver's license number or state identification number;

(d) An individual's checking account number, savings account number, credit card number, or debit card number;

(e) An individual's demand deposit account number, money market account number, mutual fund account number, or any other financial or medical account number." R.C. 149.45(A)(1).

{¶14} To the extent that the MDT screens revealed information about Boardman, that information cannot be personal information because Boardman is not an individual. To the extent that Boardman claims that the screens revealed information about an

individual, Boardman has failed to show that. The footage itself does not make any qualifying information visible and Boardman has offered nothing but the conclusory citation of R.C. 149.43(A)(1)(dd), with no supporting evidence, or even an explanation, of what type of qualifying information was on the screens. That is not sufficient. *Welsh-Huggins*, 2020-Ohio-5371, ¶¶ 30, 35.

{¶15} That is not changed by Boardman's affidavit testimony that the MDTs supposedly showed "informant information." That appears to be an invocation of the confidential law enforcement investigatory record exception provided by R.C. 149.43(A)(2)(b), but Boardman has provided no evidence that the informants were promised the confidentiality required by that statute.

{¶16} *License plate and vehicle identification number of offender's vehicle*. Boardman also invokes R.C. 149.43(A)(1)(dd) to support these redactions, but this information is not among of the types of information listed in R.C. 149.45. Givern the general rule against courts adding terms omitted from a statute, and the precedent specifically requiring the narrow construction of exemptions from public record status, the court is not free to add that information to the exemption Boardman relies upon. See *State ex rel. CNN, Inc. v. Bellbrook-Sugarcreek Local Schools*, 2020-Ohio-5149, ¶ 24.

{¶17} *Divers license*. Boardman redacted significant portions of the videos based on their purportedly showing the arrestee's driver's license. R.C. 149.45(A)(1)(c) does state that an "individual's driver's license number" is personal information. Boardman could therefore properly redact those portions of the footage that show the arrestee's driver's license number. However, the arrestee's license is only visible in small portions of the videos (Clip 1, part 1, at 1:00-1:10, 1:09-1:35, 3:55-4:09, 4:50-4:56, 5:19-5:29, 5:39-5:41, 21:30-22:47, 23:02-23:19). The redactions for those portions are proper, but the rest are not.

{¶18} *Insurance and registration*. Boardman invokes R.C. 149.43(A)(1)(dd) to support redactions of portions of the footage that reveal information about the arrestee's insurance coverage and the registration of the vehicle she was driving. Those pieces of information are not among the types of information listed in R.C. 149.45(A). They are therefore not exempted by R.C. 149.43(A)(1)(dd) and hence cannot be properly redacted.

{¶19} *Bystander and tow truck driver images*. Boardman redacted images of a bystander and a tow truck operator who were on the scene of the arrest, and cited R.C. 149.43(A)(1)(dd) to support that redaction. Those images do not contain the specific types of information listed in R.C. 149.45. They are therefore not exempted by R.C. 149.43(A)(1)(dd) and hence cannot be properly redacted.

{¶20} *Personal belongings*. Boardman redacted portions of the footage that showed various of the arrestee's personal items. It invoked R.C. 149.43(A)(1)(dd) to support those redactions. Those images do not contain the specific types of information listed in R.C. 149.45. They are therefore not exempted by R.C. 149.43(A)(1)(dd) and hence cannot be properly redacted.

{¶21} *Address*. Boardman redacted the audio portion of footage that revealed the arrestee's address and cited R.C. 149.43(A)(1)(dd) to support the redaction. That information is not listed in R.C. 149.45. It is therefore not exempted by R.C. 149.43(A)(1)(dd) and hence cannot be properly redacted.

{¶22} *Cell Phone Screens.* Boardman redacted images of officers' cell phones that contained images of the officers' children. It asserts that those images are not records within the meaning of R.C. 149.011(G) because they do not document Boardman's operations. That is indeed a proper basis for redactions of such images, but only a small portion of the redactions that Boardman claims contain those images do in fact contain them (6:47-6:48 and 8:44-46 of Clip 1, part 1). All other redactions on those grounds are improper.

{¶23} *Clip Board with Personal Information/Offender's Information on forms*. Boardman invokes R.C. 149.43(A)(1)(dd) to justify redactions that supposedly reveal personal information about the arrestee and other offenders, but it does not explain what that information is. That cursory approach does not satisfy Boardman's burden of proof. *Welsh-Huggins*, 2020-Ohio-5371, ¶¶ 30, 35. Further, in camera review of these portions reveals that no information of the type described in R.C. 149.45 can be perceived. These redactions are improper.

{¶24} *Audio re Home Address and information from a different incident*. Boardman redacted a portion of the audio of the footage, based on a cryptic citation to R.C. 149.43(a)(1)(hh). That statute exempts "confidential law enforcement investigatory

records," a term that is defined in R.C. 149.43(A)(2) by reference to records containing four categories of information. "As the proponent of the CLEIR exception," Boardman "has the burden to prove that the exception applies to *specific* information contained in the reports." *State ex rel. Standifer v. City of Cleveland*, 2022-Ohio-3711, ¶ 22 (emphasis added). Boardman has not identified which of the four categories cover the redacted information and the applicability of any particular category is not apparent. Boardman has therefore failed to prove the propriety of this redaction.

{¶25} *Interiors/restricted body cam footage*. Boardman redacted several parts of the footage based on explanation of "Interiors/Restricted Body Cam Footage," citing R.C. 149.43(A)(1)(jj) as the statutory basis for those redactions. R.C. 149.43(A)(1)(jj) exempts "[r]restricted portions of a body-worn camera" and R.C.149.43(A)(17) defines that term by listing the types of footage that fall within that category. The only types that refer to "interior" refer to the interior of a residence or a private business. R.C.149.43(A)(17)(p), (q). None of the footage at issue captures the interior of a residence or a private business; the only images of the interior of any building are of the interiors the Boardman Police Station and the Mahoning County Jail. Those redactions were therefore improper.

{¶26} *Medical Records*. Boardman also cites R. C. 149.43(A)(1)(a) as justification for one of its redactions. That statute exempts medical records and has no apparent applicability here.

***

{¶27} In sum, I recommend that the court take the following action on requester's claim for production of records:

- Deny as moot his claim for production of reports.

- Order respondent to produce body camera footage from the cameras worn by the other two officers involved in Lovins-Clipse's arrest and processing, subject to redactions to protect third parties' statutory privacy rights, or certify that no further footage exists.

- Order respondent to produce copies of the footage already produced without redactions, except those for the redactions at 1:00-1:10, 1:09-1:35, 3:55-4:09, 4:50-4:56, 5:19-5:29, 5:39-5:41,6:47-48, 8:44-46, 21:30-22:47, and 23:02-23:19 of Clip 1, part 1.

**B. Respondent unreasonably delayed its response to this request.**

{¶28} Boardman did not substantively respond to this request until December 2, 2024, more than a year after the request was made. It produced 10 pages of responsive records containing a single redaction of personal contact information. It also produced some of the body camera footage requested. *Respondent's Evidence*, pp. 9-20.

{¶29} R.C. 149.43(B)(1) mandates that "upon request . . . a public office . . . shall make copies of the requested public record available to the requester . . . within a reasonable period of time." A public office's compliance with that requirement is evaluated based on the facts and circumstances of the request. *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 10; *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5108, ¶ 16. Several aspects of Boardman's response establish that it violated R.C. 149.43(B)(1)'s timeliness requirement.

{¶30} First, the delay here is far longer than delays found unreasonable in other cases. Although each delay claim turns on its own facts, some guidance is provided by other cases. Boardman's response time was over a year. Other courts have found far shorter delays unreasonable. *State ex rel. Ware v. Bur. of Sentence Computation,* 2022-Ohio-3562*,* ¶ 17 (10th Dist.) (surveying cases). While not conclusive, that strongly suggests that Boardman's response time was unreasonable.

{¶31} Second, the request involved a relatively limited number of records and presented relatively limited review/redaction issues. Public offices are given more time to respond to requests for large volumes of records and less time for requests with fewer responsive records. *State ex rel. Shaughnessy v. City of Cleveland*, 2016-Ohio-8447, ¶ 14; *Kesterson*, 2018-Ohio-5108, ¶ 17; *State ex rel. Patituce & Assocs., LLC v. City of Cleveland*, 2017-Ohio-300, ¶ 7 (8th Dist.); *Easton Telecom Servs., L.L.C. v. Village of Woodmere*, 2019-Ohio-3282, ¶¶ 46-49 (8th Dist.); *State ex rel. Clark-Shawnee Local School Dist. Bd. of Edn. v. City of Springfield*, 2024-Ohio-2483, ¶ 26 (2d Dist.); *State ex rel. Miller v. Ohio Dept. of Edn.*, 2016-Ohio-8534, ¶ 8 (10th Dist.); *Ware*, 2022-Ohio-3562, ¶ 19. Relatedly, more time is allowed if the volume or nature of responsive records make legal review and redaction more time consuming. Compare *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 59 and *Anderson v. Greater*

*Cleveland Regional Transit Auth.*, 2018-Ohio-3653, ¶ 7, adopted, 2018-Ohio-4596 (Ct. of Cl.) with *Miller*, 2016-Ohio-8534, ¶ 8; *State ex rel. Simonsen v. Ohio Dept. of Rehab. & Correction*, 2009-Ohio-442, ¶ 10 (10th Dist.); *State ex rel. Korecky v. City of Cleveland*, 2020-Ohio-273, ¶ 19. The volume of records responsive to Mr. Kearns' request was not large. The redaction issues were relatively straight forward, certainly not so complicated as to take more than a year to work through. This too suggests that Boardman's response time was unreasonable.

{¶32} Third, the production only occurred after litigation commenced. Courts are more likely to find a delayed production unreasonable if it only occurs after suit was filed. *Miller*, 2016-Ohio-8534, ¶ 8; *Ware*, 2022-Ohio-3562, ¶ 19; *State ex rel. Schumann v. City of Cleveland*, 2020-Ohio-4920, ¶ 9 (8th Dist.); *Staton v. Village of Timberlake*, 2023-Ohio-1860, ¶ 13, adopted 2023-Ohio-2322. That makes sense; it is difficult to justify delays that require requesters on one hand, and the courts and public offices (and the taxpayers who fund both) on the other, to expend time and money on avoidable controversies. That is what we have here.

{¶33} Fourth, Boardman has offered no explanation for its wasteful delay. Other courts have held that is an indicia of undue delay. *Ware*, 2022-Ohio-3562, ¶ 19; *Clark-Shawnee*, 2024-Ohio-2483, ¶ 26.

{¶34} I therefore recommend that the court find that Boardman violated R.C. 149.43(B)(1)'s mandate to timely respond to record requests.

### C. Requester is entitled to recover his filing fee and costs; respondent should bear the balance of the costs.

{¶35} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office *** the amount of the filing fee *** and any other costs associated with the action[.]" Mr. Kearns was aggrieved because Boardman violated R.C. 149.43(B)(1) by failing to timely produce the records he sought. I therefore recommend that he recover his filing fee and the costs he incurred in this case. I recommend that Boardman bear the balance of the costs of this case.

### III.    Conclusion.

{¶36} Based on the foregoing, I recommend that the court:

A.  Deny as moot requester's claim for production of reports.

B. Order:

1. Respondent to produce body camera footage from the cameras worn by the other two officers involved in Lovins-Clipse's arrest and processing, subject to redactions to protect third parties' statutory privacy rights, or to certify that no further footage exists.

2. Respondent to produce copies of the footage already produced with only the redactions to 1:00-1:10, 1:09-1:35, 3:55-4:09, 4:50-4:56, 5:19-5:29, 5:39-5:41,6:47-48, 8:44-46, 21:30-22:47, and 23:02-23:19 of Clip 1, part 1.

3. That those productions/certifications be made no later than 30 days after the entry of any judgment adopting this report and recommendation.

4. Respondent to file an affidavit no later than 40 days after the entry of any judgment adopting this report and recommendation certifying that those productions/certifications have been made.

C. Hold that respondent violated R.C. 149.43(B)(1) by unreasonably delaying production of the records requested.

D. Order respondent to pay requester his filing fee and costs.

E. Order respondent to bear the balance of the costs of this case.

{¶37} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

TODD MARTI
Special Master

Filed January 21, 2025
Sent to S.C. Reporter 2/13/25